[Cite as *In re E.C.*, 2022-Ohio-968.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

In re E.C.

Court of Appeals No.  H-21-010

Trial Court No. DNA 2019 00094

**DECISION AND JUDGMENT**

Decided:  March 25, 2022

* * * * *

James J. Sitterly, Huron County Prosecuting Attorney, and
Richard H. Palau, Assistant Prosecuting Attorney, for appellee.

Christopher S. Clark, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this expedited appeal, appellant-mother, K.B., appeals the judgment of the

Huron County Court of Common Pleas, Juvenile Division, following her Motion to

Modify Dispositional Orders.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} This case began on August 16, 2019, when appellee, the Huron County Department of Job and Family Services ("HCDJFS"), filed a complaint alleging that E.C., mother's infant son, was a dependent child. E.C. was born in March 2019 with a missing chromosome, and has special needs. The complaint alleged that mother had a mental health breakdown and was not able to provide safe care for E.C.

{¶ 3} A shelter care hearing was held, and E.C. was placed in the temporary custody of his maternal great aunt and uncle, S.M. and T.M., under the protective supervision of HCDJFS. Mother was granted supervised visitation with E.C. Thereafter, E.C. was adjudicated dependent. After the disposition hearing, the trial court ordered that E.C. continue to be placed in the temporary custody of S.M. and T.M. Mother was ordered to complete a mental health assessment, complete a parenting class, comply with any psychiatric treatment, and obtain and maintain stable housing and employment.

{¶ 4} In December 2019, less than a month after the dispositional hearing, HCDJFS filed a motion for an emergency shelter care hearing. HCDJFS alleged that S.M. and T.M. no longer wished to care for the child because mother had been harassing them, had caused issues with E.C.'s medical appointments, and had been disruptive at E.C.'s physical therapy appointments. Following the shelter care hearing, the trial court ordered that E.C. continue in the temporary custody of S.M. and T.M., and that mother was barred from attending any and all medical or therapeutic appointments for E.C., and

2.

was further barred from communicating with any of E.C.'s medical or therapeutic providers.

{¶ 5} On January 21, 2020, mother filed a motion for unsupervised parenting time. One week later, on January 28, 2020, mother filed a motion for legal custody of E.C. Mother asserted that she was compliant with her case plan services, that she was engaged in mental health counseling, that she was gainfully employed and had her own residence, that she had not missed any of her supervised visits, and that the supervised visits had gone well. On March 13, 2020, S.M. and T.M. moved for legal custody of E.C. During the course of the case, multiple pretrial hearings were held on these motions. Furthermore, several additional motions regarding modifications to mother's parenting time were filed and addressed by the court.

{¶ 6} On November 23, 2020, a trial was held on mother's motion for unsupervised parenting time, and the parties' respective motions for legal custody. In its November 25, 2020 judgment entry following the trial, the trial court found that awarding legal custody of E.C. to S.M. and T.M. was in E.C.'s best interest. The court noted that mother, through her attorney, did not contest the award of legal custody to S.M. and T.M. Instead, mother focused on her belief that it would be in E.C.'s best interest to have unsupervised visitation with her.

{¶ 7} In denying mother's request for unsupervised visitation, the trial court found that mother had completed her mental health assessment and had complied with its

3.

recommendations. In addition, mother had completed the parenting classes, and had maintained employment and stable housing. However, the court noted that one of the conditions of mother's case plan was that she not involve herself in domestically violent relationships. On that issue, the trial court found that mother had continued to maintain a relationship with E.C.'s father, who was at the time serving a prison sentence for an offense of violence against a five-year-old child. Moreover, the court found that mother had lied about that relationship to the guardian ad litem. In addition to those concerns, the trial court also found that mother had demonstrated frustration and engaged in outbursts during her supervised visits with E.C., and had interacted aggressively and inappropriately with E.C.'s therapists. Thus, because of E.C.'s tenderness and vulnerability, the court found that it would be in E.C.'s best interest to continue supervised visitations.

{¶ 8} On April 13, 2021, mother moved to modify the dispositional orders. In addition to requesting the use of Our Family Wizard to facilitate communication between herself and S.M. and T.M., mother sought expanded parenting time, including unsupervised parenting time.

{¶ 9} A trial on this motion was held on July 28, 2021. Ashley Barnum, mother's counselor at Ohio Guidestone, testified that she had been meeting with mother for the past 18 months. Barnum described that mother had completed the "Nurturing Parenting" program within the first two to three months—as compared to the typical four to six

4.

months that the program takes—and has elected to continue meeting with Barnum monthly for additional support in her relationship with E.C. Barnum testified that mother has done everything that Barnum has asked of her. On cross-examination, Barnum testified that she discusses mother's anxieties with her, and that mother's anxiety largely centers on the care of E.C. by S.M. and T.M.

{¶ 10} The next witness was Tara Ohlemacher, the executive director of Kinship. Ohlemacher testified that mother has been visiting E.C. at Kinship since December 2020 without interruption. Ohlemacher testified that she does not have any significant concerns regarding mother's parenting time. On cross-examination, Ohlemacher was asked about a visit in January 2021 where E.C. was observed "stimming," or rocking back and forth, as a method of self-soothing. Ohlemacher testified that while that is something that E.C. may do developmentally, she did not have any concerns with how mother was visiting with E.C.

{¶ 11} Mother called T.M. as a witness next. T.M. testified that he does not want mother to be any part of E.C.'s life. T.M. indicated that he tolerates the supervised visits at Kinship, but that if he had his way, those visits would stop. T.M. explained that he does not believe that mother is capable of being around E.C. and keeping him safe. Upon direct examination from mother, T.M. described an incident on March 20, 2021, at a gathering in Norwalk, Ohio. At the gathering, when there were only three or four minutes left in the visit, S.M. and T.M. asked mother to move E.C. away from an

5.

electrical outlet. Mother responded to T.M., "Shut the f*** up. You're a f***ing piece of sh**." At that point, T.M. announced that the visit was over and reached down to pick up E.C. T.M. testified that mother "ripped [E.C.] down and bear hugged him." Not wanting to hurt E.C., T.M. let go of him, and directed someone to call the police. No one was arrested as a result of the incident.

{¶ 12} On cross-examination, T.M. testified that he did not want mother to be involved in the medical appointments because early on in E.C.'s life, mother failed to maintain E.C.'s medical appointments or schedule follow up care. T.M. also stated that at one physical therapy appointment, mother disrupted the appointment and prevented S.M. and T.M. from seeing what to do for E.C.'s therapy.

{¶ 13} Additionally, T.M. testified regarding E.C.'s behavior following visits with mother. T.M. described that E.C. is not himself and is totally upset for several days after the visits. According to T.M., E.C. is upset, will not sleep, wants to be held close, and "stims" uncontrollably. After E.C.'s last visit with his mother, T.M. was awake until 1:00 or 2:00 a.m. trying to soothe E.C. so that he would go to sleep.

{¶ 14} Following T.M.'s testimony, S.M. testified that she also does not want mother to be involved in E.C.'s life outside of her visitations at Kinship.

{¶ 15} Mother then testified on her own behalf. Mother testified that she has been employed as a skilled nursing assistant for the past six years, and that in her position she helps with the care and therapy of developmentally disabled persons, physically disabled

6.

persons, as well as people with dementia or Alzheimer's disease. Regarding her relationship with E.C.'s father, mother testified that she obtained a five-year restraining order against him on June 6, 2021.

{¶ 16} Mother also testified about her visits with E.C. Mother described that E.C. is constantly crawling in her lap, and is kissing, hugging, and snuggling with her. Mother testified that E.C. is always very happy to see her, and that he seems like someone who misses his mother. Mother testified that she has observed E.C. "stimming," and that she usually responds by doing "piano fingers" on his back. If E.C. falls, mother gives him a big bear hug which helps to reset E.C. Mother explained that she has a history of "stimming" herself because she is "neurodivergent," and thus she feels like she is in an excellent position to help E.C. with that behavior.

{¶ 17} Mother testified that she would like unsupervised parenting time. Mother believes that she has more than proven that E.C. is safe with her.

{¶ 18} The final witness called by mother was Carrie Kimmet, the guardian ad litem. Kimmet testified that she believed that supervised visits should continue, and if an appropriate supervisor was identified, those visits would not have to occur at Kinship. Kimmet also testified that, outside of scheduling issues, she has no concerns with mother's visits being increased in both frequency and duration. Kimmet did note on cross-examination that changes in visitation should be done in conjunction with the recommendation of E.C.'s doctors.

7.

{¶ 19} Following mother's presentation of evidence, T.M. took the stand once again. T.M. testified that he believes that the court's focus should be on what is in E.C.'s best interest. T.M. believes that mother is unstable, and is unable to safely care for E.C. T.M. also noted that prior to the restraining order, mother continued to have contact with E.C.'s father despite the court order prohibiting her from doing so. Finally, T.M. testified that, because of the irreparable relationship between himself and mother, he was worried that mother would plant thoughts in E.C.'s head and undermine E.C.'s relationship with T.M. and S.M.

{¶ 20} Following the trial, the trial court entered its judgment on August 10, 2021. Regarding the issue of unsupervised parenting time, the trial court held that visits should continue to be supervised, but that they could be longer in duration. In support of its holding, the trial court found that mother had made excellent progress in her mental health counseling. The court also found that the director of the Kinship Program had no significant concerns about mother's parenting time. However, the court found that after a visit with mother, E.C. would be observed "stimming" for several days as a self-soothing behavior. The court noted that after the most recent visit, T.M. was awake until 1:00 or 2:00 a.m. attempting to soothe E.C. Finally, the court cited the guardian ad litem's recommendation that the visits should remain supervised, but could be longer in duration. The court, therefore, ordered that appellant be granted supervised visitation with E.C. every other week, for up to three hours per visit.

8.

## II. Assignment of Error

{¶ 21} Appellant has timely appealed the August 10, 2021 judgment of the trial court, and now asserts one assignment of error for our review:

> 1. The trial court abused its discretion in determining that it was in the best interest of the child to deny appellant-mother's motion to modify dispositional orders, specifically a request for unsupervised parenting time.

## III. Analysis

{¶ 22} In this case, E.C. was adjudicated a dependent child and legal custody of him was awarded to S.M. and T.M. pursuant to R.C. 2151.353(A)(3). As such, mother retains "residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.353(A)(3)(c).

{¶ 23} On appeal, mother challenges the trial court's denial of her motion for unsupervised parenting time. "When considering a motion for parental visitation, following an adjudication of dependency under R.C. 2151.353, the juvenile court is required to focus 'solely' on the best interest of the child." *In re H.P.*, 6th Dist. Lucas No. L-21-1090, 2021-Ohio-4446, ¶ 8. In making the "best interest" determination, the juvenile court should consider the factors listed in R.C. 3109.051(D). *Id.* at ¶ 10. Those factors are:

9.

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parent's available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

* * *

(7) The health and safety of the child;

* * *

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to

a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

* * *

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D).

**{¶ 24}** We review a trial court's decision on parental visitation for an abuse of discretion. *In re H.P.* at ¶ 11, citing *In re J.S.*, 11th Dist. Lake No. 2011-L-162, 2012-Ohio-4461, ¶ 19. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 25}** In support of her assignment of error, mother argues that unsupervised visitation is in E.C.'s best interest because it would facilitate the development of his relationship with her. Mother also asserts that because E.C. is only just turning three years old, that he would be adaptable to the change. Finally, mother argues that she has sought to improve the way she relates to E.C. through counseling and by increasing her understanding of E.C.'s mental and physical needs, and notes that there have been no issues or concerns with her visitations.

**{¶ 26}** Upon review, we cannot say that the trial court abused its discretion in denying mother's request for unsupervised visitation. We agree with the trial court that mother appears to have made great strides in her mental health counseling, and we

11.

recognize that the supervised visitations have been occurring without any issues other than scheduling difficulties. Nonetheless, the trial court did express concern with E.C.'s behavior following the visits, specifically his need to self-soothe for up to several days after the visit. Given E.C.'s young age and unique needs, we do not find that the trial court acted in an arbitrary, unreasonable, or unconscionable fashion when it proceeded down a cautious path of increasing the frequency and duration of the visits while still maintaining that the visits be supervised. Therefore, we hold that the trial court's August 10, 2021 judgment was not an abuse of discretion.

{¶ 27} Accordingly, mother's assignment of error is not well-taken.

## IV. Conclusion

{¶ 28} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.   _____
             JUDGE

Christine E. Mayle, J.

             _____
Myron C. Duhart, P.J.       JUDGE
CONCUR.

             _____
             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.